David WHITE and Peter White, a minor, by his natural father and guardian, James White; James White; Eric Rappaport, a minor, by his natural father and guardian, Julian Rappaport; and Julian Rappaport

v.

The SALISBURY TOWNSHIP SCHOOL DISTRICT and the Salisbury Township Board of Education; and Daniel B. Knauer, individually and in his official capacity as Superintendent of the Salisbury Township School District; and Dr. John Flautz; Alton Slane; Kathleen Novak; Joseph Anatasi; Arlene Peiffer; Blanche Engler; Kenneth Sacks; Anthony Stellar; Michael Boyko, individually and in their official capacities as members of Salisbury Township Board of Education and Mario Donnangelo, and Anna Buschi, individually and in their official capacities with Salisbury High School.

Civ. A. No. 80–658.

United States District Court, E.D. Pennsylvania.

March 22, 1984.

---

Joan Sheak, Bethlehem, Pa., for plaintiffs.

Joseph Lurie, David Freedman, Philadelphia, Pa., Harry Creveling, Allentown, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

Following their suspensions from high school, plaintiffs David White, Peter White and Eric Rappaport instituted this action against the Salisbury Township School District, the Salisbury Township Board of Education and various school officials and school board members.[1] The complaint alleges that the defendants, acting under the color of state authority, denied plaintiffs their constitutional rights by imposing suspensions on them without affording them due process of law.[2] It further alleges that the defendants violated state regulations which control the procedures to be followed in suspending students from public schools. In addition to seeking monetary damages for both the federal civil rights claim and the pendent state claim, plaintiffs seek a declaratory judgment that the student handbook of the Salisbury High School fails to comport with the requirements of the United States Constitution.

Defendants have moved for summary judgment. Under Rule 56 of the Federal Rules of Civil Procedure, a trial court may enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". *Hollinger v. Wagner Mining Equipment Company*, 667 F.2d 402, 405 (3d Cir.1981). In resolving a motion for summary judgment, all inferences to be drawn from the evidence in the record must be viewed in the light most favorable to the party opposing the motion. *Hollinger, supra* at 405; *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

The relevant facts are not seriously disputed. On the morning of Friday, February 1, 1980, officers of the Salisbury Township Police Department conducted a surprise raid at the Salisbury High School for the purpose of confiscating drugs and drug

---

1. At the time the complaint was filed, Peter White and Eric Rappaport were minors. Their fathers, James White and Julian Rappaport, are named as plaintiffs both individually and in their capacities as the legal guardians of their respective sons.

2. Plaintiffs allege a claim under 42 U.S.C. § 1983 as well as one directly under the Constitution. Where, as here, a proper § 1983 claim is alleged, plaintiffs cannot additionally proceed under the Constitution since the latter claim, insofar as it concerns the suspension in issue, is wholly subsumed by the former. *Rogin v. Bensalem Township*, 616 F.2d 680, 686 (3d Cir. 1980); *Meetinghouse Associates v. Warwick Township*, No. 82–5224 slip op. at 6 (E.D.Pa. January 17, 1984). However, plaintiffs are not prohibited from pursuing their constitutional claim under the Declaratory Judgment Act since the substance of that claim is not included in that of the § 1983 claim and, therefore, would not be duplicative.

paraphernalia. The target of the police action was a group of students who gathered outside the high school gymnasium doors each morning prior to the start of classes. It was believed, based upon the results of a surveillance operation conducted by the local police, that the students would gather for the purpose of using drugs. Consequently, twenty-one students, including the plaintiffs, were arrested, taken inside the gymnasium and searched. Although the police found an undisclosed amount of marijuana and various articles of drug paraphernalia on a number of the students, no contraband was found on the plaintiffs. After the search, the students involved were directed to the Principal's office to sign an attendance sheet. Thereafter, they reported to their regularly scheduled classes. No disciplinary action was taken by school authorities on that date.

By the afternoon of February 1, 1980, the parents of the student-plaintiffs had been told of the arrests and searches which had taken place at the high school. Plaintiff Julian Rappaport contacted the police department in an effort to obtain more complete information with respect to the arrest of his son, Eric.[3] He also contacted and retained counsel for Eric. Plaintiff James White likewise contacted the local police to discover what evidence they had against his sons, David and Peter. He went to the police station and saw photographs which purported to show David and Peter in the group of students smoking marijuana. He was also told by the police officers involved in the surveillance operation that, with the use of a high-powered lens, they observed his sons smoking.

On Monday, February 4, 1980, the Salisbury Township Police provided defendants Mario Donnangelo, Principal of Salisbury High School, and Ann Buschi, Assistant Principal, with a copy of the official police report on the arrests. After reviewing the report, defendant Buschi spoke with each of the students involved in the incident. These informal discussions took place throughout the course of the school day on February 4, 1980. Among those students with whom she spoke were plaintiffs Peter White and Eric Rappaport. They were told to complete their regularly scheduled classes for Monday, but not to report to classes on Tuesday morning, February 5, 1980. Instead, each student-plaintiff and his parents were asked to attend a suspension hearing being held on Tuesday morning as a result of information provided school officials in the police report. Oral notification of the hearing was ultimately given to all plaintiffs.[4]

In the evening of Monday, February 4, 1980, James White spoke with Julian Rappaport about the hearings scheduled for the following morning. During the course of that conversation, Rappaport told White that he had retained counsel for his son, Eric, and that he was meeting with counsel early Tuesday morning. Plaintiff White decided to retain the same attorney to represent his sons, David and Peter, at their hearings. Consequently, all of the plaintiffs met on Tuesday morning at the office of counsel. During the course of that meeting, plaintiffs' counsel contacted the defendant Donnangelo to tell him that she would be representing the student-plaintiffs at the hearings. In light of this information, the defendants likewise sought to have their attorney present. Because the defendants' attorney was unavailable Tuesday morning, it was agreed that the hearings would be held Wednesday morning, February 6, 1980.

---

**3.** The deposition testimony of Julian Rappaport indicates that the information given to him by the police was consistent with what his son had told him about the arrests. It also shows that the police were willing to make available their surveillance photographs for his study as soon as the photographs were developed. *See,* Deposition testimony of Julian Rappaport at pp. 161–168.

**4.** Although David White, who had an excused absence from school on Monday, February 4, 1980, was not personally notified of the hearing by defendant Buschi, both his brother and mother were notified and they passed the information to him and his father.

At the hearings on Wednesday morning, testimony was presented by the police officers involved in the surveillance operation. The photographs taken of the student-plaintiffs were part of the evidence as to which the officers testified. Counsel for the plaintiffs cross-examined the officers with respect to their testimony. Although the officers answered questions under cross-examination, they refused to respond to certain inquiries without first conferring with a district attorney. Since no district attorney was present, certain questions went unanswered. Plaintiffs' counsel also questioned defendants Donnangelo and Buschi as to their decision-making process with respect to the suspensions. No testimony was presented by the student-plaintiffs in their own behalf.[5] At the conclusion of each of the student-plaintiffs' hearings, a ten-day suspension was formally imposed and made retroactive to Tuesday morning, February 5, 1980, at 8:00 A.M. It was explained by defendant Donnangelo that a ten-day suspension would not be made part of the student's permanent record and that each student would be permitted to make up any work he missed.

Subsequent to the suspension hearings, plaintiffs' counsel sought and was successful in obtaining an injunction from the Court of Common Pleas of Lehigh County against the issuance of the suspensions. Thereafter, the state action was voluntarily dismissed and this action was filed.

In *Goss v. Lopez*, 419 U.S. 565, 581, 95 S.Ct. 729, 739, 42 L.Ed.2d 725 (1975), the Supreme Court held that a student has a property interest in his right to public education which

> qualif[ies] for protection of the Due Process Clause, and due process requires, in connection with a suspension of 10 days or less, that the student be given *oral* or *written* notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have

and an opportunity to present his side of the story. [emphasis added].

The Court added that "[t]here need be no delay between the time 'notice' is given and the time of the hearing". *Goss v. Lopez*, 419 U.S. at 582, 95 S.Ct. at 740. It was recognized that, in most cases, the disciplinarian is likely to have an informal discussion with the student regarding the alleged misconduct only minutes after it has occurred. *Id.* Such discussions are sufficient to meet due process requirements provided the student is first told what he is accused of doing and the basis for the accusation and then given an opportunity to explain his version of the facts. *Id.* However, "[s]ince the hearing may occur almost immediately following the misconduct, it follows that as a *general rule* notice and hearing should precede removal of the student from school". *Id.* (emphasis added).

In the matter at bar, the plaintiffs were orally notified of the charges against them and of the suspension hearings being held in connection with those charges. As such, the school authorities complied with the notice requirements of *Goss*. However, there is a dispute as to whether the suspensions were imposed prior to or subsequent to the hearings. Defendants contend that the suspensions were not formally imposed until after the hearings held on Wednesday, February 6, 1980. In resolving this dispute, we are mindful of our duty to view all evidentiary inferences in a light most favorable to the plaintiffs. The evidence shows that on Monday, February 4, 1980, the student-plaintiffs were told by defendant Buschi to complete their regularly scheduled classes for that day but not to report to classes the following morning. Instead, they were asked to report directly to their suspension hearings. It is clear that the discussions between defendant Buschi and the student-plaintiffs cannot meet the informal hearing requirements of *Goss*. The facts show that the discussions were used merely as a means of giving

---

**5.** Plaintiffs allege in their complaint that they were not permitted to present evidence in their own behalf at the hearing. For purposes of summary judgment, this allegation cannot stand in the face of deposition testimony which would indicate the contrary.

notice to the students of the charges against them and of the time and place of the hearings. Defendant Buschi refused to discuss the specifics of the matter with the students at that time and to provide them with an opportunity to give their version of the story. Despite this refusal, the students were directed *not* to attend classes beginning Tuesday morning. Moreover, when the hearings were postponed until Wednesday morning, the students were not told to disregard their previous instructions and to attend their regularly scheduled classes on Tuesday. Consequently, they were prohibited from attending one full day of classes prior to the suspension hearings. In addition, the suspensions imposed at the Wednesday hearings were made retroactive to Tuesday, February 5. On these facts, we find that the imposition of the plaintiffs' suspensions must be deemed to have taken place prior to their hearings.

Therefore, we must determine whether the prior imposition of suspensions amounted to a denial of the plaintiffs' rights to due process. It is axiomatic that the concept of due process is a flexible one whose requirements are dependent in large part on the particular facts and competing interests present in each case. *Goss v. Lopez, supra* at 578–579, 95 S.Ct. at 738; *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961); *Chung v. Park*, 514 F.2d 382, 386 (3d Cir. 1975); *Casey v. O'Bannon*, 536 F.Supp. 350 (E.D.Pa.1982). In this regard, the court in *Goss* was quick to point out that a hearing prior to suspension was merely a general rule to be followed particularly where the student's removal from school occurs "almost immediately following the misconduct". *Goss, supra* at 582, 95 S.Ct. at 740. The Court clearly recognized "that there are recurring situations in which prior notice and hearing cannot be insisted upon". *Id.* For instance, the immediate removal from school of "[s]tudents whose presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process" will not violate due process provided a hearing fol-

lows as soon thereafter as is practicable. *Id.*

We find such to be the circumstances of the case at bar. It is undisputed that the suspensions were not imposed immediately following the alleged misconduct. The police arrested and searched the students on school premises on Friday, February 1, 1980. School authorities took no disciplinary action against the students until after the official police report was received and reviewed Monday, February 4, 1980. At that time, school officials would have been justified, under *Goss*, in immediately removing the students in question from school. Evidence showing either the use or possession of drugs at school by the students in question certainly raises the possibility of danger to persons or property as well as the threat of disruption of the academic process. However, the school authorities chose to permit the students involved to complete their classes for the day, but prohibited them from reporting to class Tuesday morning. Instead, they were asked to report directly to hearings being held at the school in connection with their suspensions. As originally planned, the students' removal from school, which officially began Tuesday morning, would have coincided with the suspension hearings scheduled for the same time. The subsequent postponement of the hearings until Wednesday, February 6, resulted in the students missing one full day of classes prior to receiving a hearing on their removal. Therefore, the specific question we must decide is whether a hearing with respect to the suspension of a student from public school which is held one day after that student's actual removal from school is sufficiently prompt to meet due process requirements. Where, as here, circumstances justify a student's immediate removal from school prior to hearing, *Goss* requires that a hearing be held "as soon [thereafter] as practicable". *Goss*, 419 U.S. at 582–583, 95 S.Ct. at 740.

 We find the hearing to have been held sufficiently promptly to meet the due process requirements of *Goss*. The one-

day delay of the hearing was in many ways attributable to the plaintiffs themselves. The Supreme Court stated that due process does not require adversarial-type "hearings in connection with short suspensions [which] afford the student the opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident". *Goss, supra* at 583, 95 S.Ct. at 740. All that is required with respect to a suspension of ten days or less is "effective notice and [an] informal hearing permitting the student to give his version of the events". *Id.* Once plaintiffs chose to formalize the proceedings by retaining counsel to represent them at the hearings and seeking to confront and cross-examine witnesses supporting the charge, the defendants were entitled to have their own counsel present to advise them. Unfortunately, the defendants were not notified that plaintiffs would be represented by counsel at the Tuesday hearings until Tuesday morning. Since the defendants' attorney was not available on such short notice, all parties agreed to the one-day postponement. In so agreeing, plaintiffs sacrificed expediency but gained the greater protections of the adversarial hearing. Under these circumstances, the delay is neither attributable to the defendants nor violative of due process. Consequently, we will grant the defendants' motion for summary judgment as to the federal civil rights claim.

We read defendants' motion, which seeks summary judgment as to all federal claims arising under the Civil Rights Act and the United States Constitution, to include plaintiffs' claim under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. In that regard, the complaint alleges that the Salisbury High School student handbook is constitutionally deficient in its handling of procedures to be followed in imposing full suspensions on students, *i.e.*, exclusions of up to ten days. According to the complaint, the handbook states that a full suspension shall be imposed "after an informal hearing before an administrator is offered to the student and the student's parents".

Complaint at paragraph 14. Plaintiffs cannot and do not dispute the constitutionality of the above quoted procedure. However, they contend that without the inclusion of additional information detailing the steps to be taken in carrying out the procedure, it is rendered constitutionally deficient. We find this argument to be wholly without merit.

■■■ Clearly, due process rights attach to procedures, such as suspensions, which infringe upon a student's right to public education. However, we know of no constitutional provision requiring that, in addition to drafting and publishing procedures governing suspensions, school authorities must likewise draft and publish detailed procedural safeguards which closely regulate the conduct of same. While the establishment of such rules might prove helpful to both students and disciplinarians, their publication is not mandated. Consequently, we are not now prepared to say that where constitutionally sound procedures governing school suspensions are published, they are somehow rendered deficient if not published in conjunction with detailed procedural safeguards. Whether or not the establishment and publication of suspension procedures and safeguards are required is more properly within the authority of the state. Presently, many states have regulations controlling this issue. However, where a state has issued regulations requiring school districts to promulgate and publish specific procedural rules and safeguards governing suspensions, a failure to comply with those regulations would violate state law *only* and would not rise to the level of a constitutional violation. Therefore, we will grant the defendants' motion for summary judgment as to plaintiffs' claim under the Declaratory Judgment Act.

Plaintiffs' remaining claim alleges that the procedures followed by the defendants in imposing the suspensions directly contravene controlling Pennsylvania regulations. Conceding certain technical violations of the aforementioned regulations, *e.g.* failure to give written notice, defendants nonethe-

less contend that the issue remains open because the plaintiffs were not prejudiced by these violations. More importantly, defendants argue that the merits of this claim need not be reached because dismissal is warranted on jurisdictional grounds.

Where a claim arises under state law and the parties on either side of the claim are non-diverse, a district court has no independent federal jurisdiction. In such cases, the court may not hear the claim unless it falls within its power of pendent jurisdiction. Where, as here, the state and federal claims derive from a common nucleus of operative fact and are such that they would ordinarily be expected to be tried in one judicial proceeding, then the court has the power to hear the state claim provided the federal issues are substantial. *United Mine Workers v. Gibbs*, 383 U.S. 715, 728, 86 S.Ct. 1130, 1140, 16 L.Ed.2d 218 (1966); *Shaffer v. Board of School Directors*, 730 F.2d 910, 911 (3d Cir.1984). Ordinarily, if the federal claim as pleaded is sufficient to confer subject matter jurisdiction on the court, it is substantial within the meaning of *Gibbs*. *Id.* 383 U.S. at 725, 727, 86 S.Ct. at 1138–39.

Applying the test of *Gibbs* to the facts of the instant matter, it is clear that this Court has pendent jurisdiction over the state claim. However, the power conferred on the Court by virtue of the doctrine of pendent jurisdiction need not be exercised in each case in which it is found to exist. *Id.* at 726, 86 S.Ct. at 1139. "[T]he court has broad discretionary powers to decline pendent jurisdiction after considering judicial economy, convenience, fairness to the parties, and comity". *Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474, 478 (3d Cir.1979); *Gibbs, supra* 383 U.S. at 726, 86 S.Ct. at 1139; *Shaffer v. Board of School Directors*, 730 F.2d 910, 912 (3d Cir.1984). Moreover, the Supreme Court has held that "if the federal claims are dismissed before trial, even though not insubtantial in a jurisdictional sense, the state claims should be dismissed as well". *Gibbs, supra* 383 U.S. at 726, 86 S.Ct. at 1139; *Shaffer v. Board of School Directors, supra* at 913.

Upon consideration of the enumerated relevant factors, we decline to exercise pendent jurisdiction over the state claim in issue. Rather, we will dismiss the claim without prejudice to its being reasserted in the Pennsylvania courts. Under the circumstances, any other course of action would be ill-advised. Judicial economy is the only factor which arguably weighs in favor of our hearing the state claim. In that regard, the Third Circuit has previously emphasized "that the time already invested in litigating the state cause of action is an insufficient reason to sustain the exercise of pendent jurisdiction." *Weaver v. Marine Bank*, 683 F.2d 744, 746 (3d Cir. 1982) quoting *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187 (3d Cir.1976). Moreover, the effect of our decision on the convenience of the parties, if any, is to benefit all parties and witnesses since the claim is likely to be reasserted in the Court of Common Pleas of Lehigh County and most of those involved reside in or near Lehigh County. Additionally, no one will be prejudiced by the bringing of this claim in state court. Any potential problem plaintiffs might have faced with respect to the statute of limitations has been alleviated by 42 Pa.C.S.A. § 5103(b) which permits the transfer of a claim to state court after its dismissal on jurisdictional grounds in federal court. Perhaps the most compelling reason for declining to exercise pendent jurisdiction over the state claim is the state's interest in determining issues of state law. *Shaffer v. Board of School Directors, supra* at 913. This is particularly true where the state law involved concerns education. The Supreme Court has described education as "perhaps the most important function of state and local governments". *Brown v. Board of Education*, 347 U.S. 483, 493, 74 S.Ct. 686, 691, 98 L.Ed. 873 (1954). Moreover, the state's interest is further enhanced where, as here, it has promulgated regulations which are arguably more protective of student rights than is the Constitution. For all of these

reasons, we decline to exercise pendent jurisdiction over the state claim.

An appropriate order shall issue entering judgment on behalf of the defendants as to the federal claims and dismissing the state claim without prejudice to the plaintiffs reasserting it in the appropriate state court.