James BARTHOLOMEW

v.

Frank FISCHL and the City
of Allentown.

Civ. A. No. 81–3687.

United States District Court,
E.D. Pennsylvania.

Nov. 20, 1984.

Richard J. Orloski, Allentown, Pa., for plaintiff.

Joan Sheak, Asst. U.S. Atty., Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

The instant action, brought pursuant to 42 U.S.C. § 1983, alleges that defendants Frank Fischl, former mayor of Allentown, Pennsylvania, and the City itself, by means of a retaliatory and defamatory campaign, caused plaintiff James Bartholomew to suffer loss of employment and employability in his field because of Bartholomew's exercise of First Amendment rights. The case was called to trial on June 19, 1984. Initially, argument was held on defendants' outstanding motion to dismiss the complaint or, in the alternative, for summary judgment. Following argument, we granted defendants' oral motion to amend their answer to include the affirmative defense of the tolling of the statute of limitations. We then took defendants' motion, which raises the time bar as well as other issues, under advisement. Subsequently, plaintiff moved the Court to reconsider its decision allowing the amendment to the answer. Now before the Court are defendants' motion to dismiss and/or for summary judgment and plaintiff's motion to reconsider our order of June 19, 1984.[1]

---

1. On August 29, 1984, defendants filed a motion to compel the continuation of plaintiff's deposition. We do not consider that motion here.

The basic facts of the case are relatively straightforward, but require some historical data to make them intelligible. In 1964, the cities of Allentown and Bethlehem agreed to establish a Bi-City Health Board consisting of appointees from both cities, with each city to contribute a proportionate share of the Board's budget. Sometime later, a Bi-City Health Bureau, consisting of the merger of the Health Bureaus of Allentown and Bethlehem was established to carry out the Bi-City Health Board's announced function of protecting the health of the cities' residents. As initially constituted, the Board was to have two members appointed by Bethlehem and three by Allentown, with Bethlehem contributing 41% and Allentown 59% of the budget. (Exhibit B to plaintiff's brief in opposition to the motion for dismissal/summary judgment). By 1978, when Frank Fischl became mayor of Allentown, the Bi-City Health Board was comprised of five members appointed by Bethlehem and five members appointed by Allentown. (Deposition of James Schultz, Vol. I p. 7). Plaintiff James Bartholomew was appointed Acting Director of the Bi-City Health Bureau in 1974 by Board Chairman Harold Roth and held that position continuously until 1978 when the events culminating in the instant suit began. In his capacity as Acting Director, Bartholomew reported to the Community Development Directors of both cities, as well as to the Board, on day-to-day operations of the Bureau. (Deposition of James Schultz, Vol. I p. 8).

In late 1978, a situation arose among the cities, the Board and the Bureau regarding Bartholomew's status as Acting Director. Bartholomew and Roth were seeking to have Bartholomew appointed as permanent Director of the Bureau, an unacceptable development to then mayor Frank Fischl. (Deposition of James Schultz, Vol. I p. 16). For approximately nine months, Fischl tried by various means to block the appointment but was ultimately unsuccessful. On September 14, 1979, the Bi-City Health Board appointed James Bartholomew permanent Director of the Bi-City Health Bureau. Thereafter, Fischl and James

Schultz, Allentown Community Development Director, took steps to dismantle the Bi-City Health Board and establish an Allentown Board and Bureau of Health. By December 31, 1979, both the Allentown and Bethlehem city councils had voted to abolish the Bi-City scheme and establish their own separate health agencies. (Deposition of James Schultz, Vol. I, at 47, 48).

The suit arises out of the alleged reason for the mayor's adamant opposition to Bartholomew's appointment as Director of the Bi-City Health Bureau and the methods used to attempt to block the appointment and subsequently to accomplish the demise of the Bi-City Health Board. Plaintiff contends that Mayor Fischl and, through him, the City of Allentown, sought to block his appointment and subsequently to dismantle the Bi-City Health Board in retaliation for Bartholomew's advocacy of the position that Allentown's water supply should be fluoridated. He further contends that defendants obtained the abolition of the Bi-City Board and hence his position by means of a public campaign to discredit him, "... including defamatory accusations against the plaintiff", (Complaint, § 14), and that, "As a result of this slanderous, libelous, defamatory campaign, Plaintiff's career in public health has been destroyed". (Amended Complaint, § 22).

Defendant Fischl contends that his actions were motivated by Bartholomew's job performance, that he neither knew of nor cared about Bartholomew's position on fluoridation, and that defendants did not initiate or participate in a retaliatory and defamatory campaign. Defendants' knowledge of and concern with plaintiff's position on the fluoridation issue, their motives in seeking plaintiff's ouster and whether or not any public pronouncements by or on behalf of defendants were defamatory are disputed questions of material fact not appropriate for disposition on a motion for summary judgment. Accordingly, insofar as those issues are raised by the defendants in the summary judgment portion of their motion, it is denied. Consequently, we are left with three issues to consider:

whether plaintiff's complaint should be dismissed for failure to state a claim on which relief may be granted, (1) either because the averments of the complaint fail to meet the pleading specificity requirements for a § 1983 claim, or (2) because the action is time-barred and (3) whether, even if the latter is true, the Court should permit defendants to raise that issue now.

### Sufficiency of the Complaint with respect to the City of Allentown

At the outset, the Court notes that insofar as defendants' motion to dismiss for lack of specificity concerns Frank Fischl, former mayor of Allentown, it must be denied. Our Memorandum and Order of December 21, 1981,[2] concluded that plaintiff had stated a claim under § 1983 as to defendant Fischl. The Court found only two deficiencies at that time, failure to allege a class-based animus to support his § 1985 claim and failure to specify the theory underlying the complaint against the City of Allentown. Plaintiff was granted leave to amend the complaint to correct those problems.[3] The amended complaint, filed on January 11, 1982, abandoned the § 1985 claim but added a separate count against the City in an attempt to comply with the Court's order. Defendant City of Allentown has now objected to the amended complaint as still not reaching the level of specificity required for a § 1983 action in the Third Circuit. Accordingly, we consider at this time whether plaintiff's amended complaint states a claim, *i.e.*, whether he has specifically alleged an official policy or unofficial custom of the City violative of the Constitution and/or the laws of the United States. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Skrocki v. Caltabiano*, 505 F.Supp. 916 (E.D.Pa.1981); *Skrocki v. Caltabiano*, 511 F.Supp. 651 (E.D.Pa.1981); *Craven v.*

*Philadelphia*, No. 83–5478, slip op. (E.D.Pa. July 17, 1984).

A comparison of the allegations in the complaint and amended complaint reveals that the only statement referring to the City of Allentown in the original complaint is the allegation that the mayor "was adopting and implementing official governmental policy of the City of Allentown". (Complaint ¶ 4). By contrast, the amended complaint adds six paragraphs of additional allegations against the City, *inter alia*, naming the officials through whom "official policy" was implemented, (Amended Complaint ¶ 28), stating that the result of their efforts was the termination of plaintiff's position and the destruction of his career, (Amended Complaint ¶ 29), and that the results were obtained through false public pronouncements made pursuant to "official policy". (Amended Complaint ¶ 30, 31).

Once again, however, the complaint fails to meet the specificity requirements of this Circuit. In *Skrocki v. Caltabiano, supra,* the Court dealt with substantially the same issue presented here. Pursuant to a motion to dismiss, we agreed that the complaint against the municipality was deficient, *Skrocki* I, and allowed plaintiff the opportunity to amend the complaint to "... [i]dentify any illegal, official borough policy the implementation of which gives rise to a cause of action under § 1983". *Skrocki* I at 920. In response, plaintiff alleged in an amended complaint that, "... [d]efendants ... violated his Constitutional rights by implementing a decision officially adopted and promulgated by the duly authorized officers of the defendant borough which deprived the plaintiff of his rights...". *Skrocki* II, *supra,* at 652. We then held that, "Plaintiff still has not *identified* (emphasis added) the policy which the borough officially adopted and which violated his Constitutional rights. Plain-

---

**2.** *Bartholomew v. Fischl,* 534 F.Supp. 161 (E.D. Pa.1981).

**3.** "Accordingly, within 15 days from the date of the order accompanying this memorandum, plaintiff shall specify the class based discrimi-

nation underlying the § 1985 claim and, with the requisite factual specificity, the basis of the § 1983 claim against defendant, City of Allentown". *Id.* at 165.

**950**

tiff's conclusory statements ... simply do not sufficiently apprise defendant of plaintiff's claim". *Id.*

■ Similarly, in the case at bar, we cannot accept plaintiff's amended complaint as sufficient to state a claim under § 1983. Although the amended complaint has identified the actors, the means used and the results obtained, neither the Court nor the defendant can determine from it the "official policy" to which plaintiff refers. In response to the attack on the sufficiency of the claim made by the City in the instant motion, plaintiff has attempted to delineate two different policies. In his brief in opposition to the motion plaintiff states that, "Mayor Fischl and the City of Allentown had as their official policy that Allentown's water must not be fluoridated". (Plaintiff's brief at 7), and, further, that "... the campaign against him was official government policy of the City of Allentown". (Plaintiff's brief at 8).

Even if these alleged "policies" had been included in the complaint, neither could withstand a motion to dismiss. The Court can discern no Constitutional right to the fluoridation of a municipal water supply. It is the function of municipal officials to formulate and implement policies on such matters. Bartholomew, as an employee of the independent Bi-City Health Board whose function it was to advise City officials on health matters, could certainly disagree with the water fluoridation policy and attempt to change it. However, the City's refusal to take the Board's advice is not a Constitutional violation.

Moreover, the "retaliatory campaign" directed against the plaintiff, even if it were found to be an illegal act, is not enough to establish an unconstitutional policy in that, "a policy cannot ordinarily be inferred from a single instance of illegality". *Losch v. City of Parksburg, et al.*, 736 F.2d 903, 910 (3d Cir.1984). Although in this case the allegedly defamatory and retaliatory campaign was waged against the plaintiff over

a period of time and was allegedly comprised of more than one incident, it was apparently directed only against him and so can fairly be considered a "single instance". However reprehensible it may be for City officials to have engaged in a personal vendetta, if they did, their status does not convert their tortious actions against one individual into an unconstitutional policy of the City for § 1983 purposes. If it were otherwise, municipalities could be held liable for every illegal act of their employees, resulting in the sort of vicarious liability specifically eschewed in *Monell*.

In light of the foregoing discussion, Count II of the amended complaint will be dismissed for failure to state a claim upon which relief may be granted.

*Statute of Limitations*

Having found the amended complaint insufficient to state a claim against the City of Allentown, there remains the issue of whether the claim against Fischl is barred by the statute of limitations as he contends in the amended answer and motion to dismiss. Before undertaking the substantive analysis necessary to decide the statute of limitations question, however, we first consider plaintiff's vigorous objections to our ruling that allowed defendants to raise this affirmative defense nearly four years after the action was commenced and almost two years after the amended complaint was answered.[4] As mandated by Rule 15(a) of the Federal Rules of Civil Procedure, this Court has consistently adhered to a liberal policy of allowing amendments to pleadings. See, *e.g.*, *Roesberg v. Johns-Manville*, 89 F.R.D. 63 (E.D.Pa.1981) and cases cited therein. See also *Long v. Lipkins*, 96 F.R.D. 234 (E.D.Pa.1983).

In support of his assertion that it is unjust to allow defendants to raise the statute of limitations defense now, plaintiff first contends that if he had been aware of it in the first instance he would have filed a

4. The issue was first raised in the instant motion, filed in December, 1983. At oral argument defendants' counsel conceded that the technical-

ly proper procedure would be to amend the answer to assert the time bar as an affirmative defense and so moved.

protective action in state court for the intentional infliction of emotional distress[5]. To accept this argument the Court would have to ignore a significant provision of Pennsylvania's procedural rules designed to foster judicial economy. Recognizing that a federal court is empowered to hear pendent state claims when they arise "out of a common nucleus of operative fact", *Weaver v. Marine Bank*, 683 F.2d 744, 746 (3d Cir.1982), but that a federal court should normally decline to hear them when the federal claims are dismissed. *Id.* Pennsylvania protects a litigant by allowing his state claims to be transferred to the proper state court. 42 Pa.Cons.Stat.Ann. § 5103(b). That law is specifically designed to obviate the need for protective actions.

This Court has exercised the transfer option on a number of occasions. See, *e.g., White v. Salisbury Township*, 588 F.Supp. 608 (E.D.Pa.1984); *Kleinberger v. Allen Products*, 581 F.Supp. 941 (E.D.Pa.1984). A pendent state claim, timely in itself, may be transferred to state court even if the federal claims are determined to be time-barred. We do not, therefore, find plaintiff's failure to file a protective action a persuasive argument for precluding an affirmative defense.

Plaintiff's second contention, that defendants should be deemed to have waived the affirmative defense because it was raised on the eve of trial, is more substantial. Nevertheless, we conclude that the liberal amendment policy outweighs what is essentially a technical objection under the circumstances of this case. Present counsel raised the statute of limitations issue soon after entering the case in December, 1983, and plaintiff has had ample opportunity to respond to it substantively as well as procedurally and has done so. On this record, we do not find the delay intentional or so undue as to deny the defendants a consideration of the defense on the merits.

[8] The Court now directs its attention to the substantive analysis of the statute of limitations defense. Since § 1983 does not have a specific time limit the federal courts follow the three-step procedure for selecting an appropriate statute of limitations most recently described in *Burnet v. Grattan*, — U.S. —, —, 104 S.Ct. 2924, 2929, 82 L.Ed.2d 36, 43 (1984). Finding no suitable rule among the laws of the United States, we look to the common law of Pennsylvania as modified by its Constitution and statutes, keeping in mind that the rule selected must vindicate the federal interest in the enforcement of the Civil Rights Acts.

With these considerations in mind, we turn to the Third Circuit for more specific guidance. The appropriate method for selecting a statute of limitations here turns on an analysis of the claim in terms of "... the relief sought and the type of injury alleged". *Fitzgerald v. Larson, et al.*, 741 F.2d 32, 36 (3d Cir.1984). Several possibilities for characterizing the claim in order to select the proper statute of limitations have been suggested by the parties.

Initially, defendants contend that the six-month statute of limitations for actions against government officials should be applied. 42 Pa.Cons.Stat.Ann. § 5522(b)(1). Alternatively, they argue that the claim sounds in tort for defamation and should be controlled by the one-year statute of limitations found in Pa.Cons.Stat.Ann. § 5523(1). Plaintiff contends that the six-month period is not available for § 1983 actions in this Circuit and that the essential nature of the claim is interference with economic rights governed by the six-year period provided for actions that do not have a specific time limit. 42 Pa.Cons.Stat.Ann. § 5527(6) (Purdon Supp.1984). The next closest tort to which it could be analogized, he argues, is the intentional infliction of emotional distress, with a two-year period.

5. As will be explained in detail later, defendants contend that the instant action is barred by Pennsylvania's six-month statute of limitations for actions against government officials or the one-year statute provided for libel and slander. The statute of limitations for the intentional infliction of emotional distress is two years.

952

Pa.Cons.Stat.Ann. § 5524(7) (Purdon Supp. 1984).

■■■ We consider first whether Pennsylvania's six-month statute of limitations for bringing a suit against government officials should apply to this case and conclude that the application of this provision to § 1983 actions has been foreclosed. In *Knoll v. Springfield Township*, 699 F.2d 137 (3d Cir.1983), *cert. granted*, — U.S. ——, 104 S.Ct. 3571, 82 L.Ed.2d 870 (1984), the Court of Appeals for the Third Circuit held that the six-month period does not serve the remedial purposes of the Civil Rights Acts, and that decision was emphatically reaffirmed recently in *Fitzgerald v. Larson, et al., supra.*

In *Fitzgerald*, the court noted the similarity of its reasoning to that of the Supreme Court in *Burnett v. Grattan, supra.* There, in a case analogous to *Knoll* and *Fitzgerald*, the court rejected as a § 1983 statute of limitations Maryland's six-month time period for filing an administrative complaint for employment discrimination.

Although the holding in *Burnett* focused in part upon the practical differences between pursuing a claim in a state administrative agency and preparing to litigate a full-blown civil rights case in federal court, the opinion also considered the twin goals of the Civil Rights Acts: to compensate victims of civil rights violations and to prevent abuse of state power. The court emphasized that those goals must be served when selecting a statute of limitations for § 1983 actions.

Thus, the Third Circuit concluded once again that, "... the six month limitation period governing actions against government officials cannot be applied to § 1983 actions because it is too short to serve the remedial purposes of the federal civil rights statutes". *Fitzgerald* at 34. Following the unequivocal law of the Circuit, we find that the six-month statute of limitations is inappropriate for this civil rights action so we must now determine the most analogous state claim and apply its statute of limitations. Accordingly, we consider both defendants' contention that it can be

most nearly characterized as an action for defamation, and plaintiff's arguments that the gravamen of the complaint is interference with economic rights, or in the alternative, the intentional infliction of emotional distress.

It is undisputed that the events culminating in plaintiff's loss of position climaxed in December, 1979, when the Bi-City Health Board was dissolved. (Deposition of James Schultz, Vol. I at 47; Affidavit of James Bartholomew at 8). The instant suit was filed on September 10, 1981. If the claim is analyzed as plaintiff contends, the suit was timely, having been brought within two years of the injury. However, if defendant's argument prevails, the action is barred.

■■■ Both our present analysis of the complaint and the history of the case compel the conclusion that plaintiff has essentially brought a defamation action. Plaintiff alleges that, "... [D]efendants engaged in a retaliatory, protracted public dialogue, including defamatory accusations against the Plaintiff, in order to obtain his firing by the Bi-City Health Bureau and in order to destroy Plaintiff's professional career in public health". (Amended Complaint ¶ 14); "As a result of the retaliatory campaign ... Plaintiff lost his position with the Bi-City Health Bureau". (Amended Complaint ¶ 16); "The termination of Plaintiff's employment was caused solely and exclusively because of the retaliatory campaign ...". (Amended Complaint ¶ 18); and "As a result of this slanderous, libelous, defamatory campaign, Plaintiff's career in public health has been destroyed". (Amended Complaint ¶ 22).

That the actions complained of resulted in economic consequences for the plaintiff does not alter the nature of the complaint but serves merely to allow what would normally be a state defamation action to be maintained as a federal civil rights claim. We previously declined to dismiss the complaint for failure to state a claim because, "[w]hile 'mere defamation' is insufficient to invoke the aegis of the Fourteenth Amend-

ment, the contested activity is actionable in federal court where there is 'an accompanying loss of government employment' ". *Bartholomew v. Fischl,* supra, at 163, quoting *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). Thus, we have already characterized the claim, if *sub silentio.*

Moreover, the only means by which defendants could affect plaintiff's employment were indirect, through a campaign such as plaintiff alleges. Since the Bi-City Health Board was an independent agency, neither defendant Fischl or any other Allentown official had the power to fire plaintiff. All parties agree that the Board had hired Bartholomew and it alone could fire him. (Amended Complaint ¶ 7, Deposition of James Schultz, Vol. I at 88). Although defendant Fischl attempted to interfere with Bartholomew's appointment as permanent director of the Bi-City Health Bureau by lobbying the Allentown board members whom he had appointed, he was unsuccessful. (Deposition of James Schultz, Vol. I, pp. 22–23, Vol. II, pp. 47–57; Affidavit of James Bartholomew ¶ 127). Thereafter, Fischl began a campaign to abolish the Bi-City Board itself, which was successful. Again, however, he did not have the power to obtain that result directly. He could do so only by persuading a majority of city council members in Allentown and the City administration of Bethlehem that each city should establish its own health agency. If Bartholomew had been an Allentown employee and Fischl had abolished his position or simply fired him, the claim may have been analogous to interference with economic rights, but that is not the situation here. As plaintiff himself has alleged, the economic injuries he suffered were necessarily incident to the public statements of Mayor Fischl and other City officials that the Bi-City Health Bureau was inefficient and costly due in large part to plaintiff's failings as Executive Director. (See Deposition of James Schultz, Vol. I, 43–47, and Plaintiff's Exhibit C to his memorandum in opposition to the motion to dismiss).

In addition, the allegations of the amended complaint are not primarily concerned with any personal injury plaintiff may have suffered as a result of defendant's actions. Although one of the damage demands is for pain and suffering, (Amended Complaint ¶ 25(c)), there are no specific averments that the campaign against the plaintiff caused any physical or mental distress comparable to the assertions in ¶ 16 and ¶ 34 of the Amended Complaint that plaintiff lost his position and that his career was destroyed. Consequently, the personal injury claim is incidental; it cannot support the proposition that the claim as a whole is more analogous to the intentional infliction of emotional distress than to defamation.

The only remaining question is whether the one-year period allowed for defamation actions in Pennsylvania is long enough to allow the federal interest in the enforcement of the Civil Rights Acts to be vindicated. In light of the fact that the only Civil Rights Act provision to contain a statute of limitations, 42 U.S.C. § 1986, has a one-year limit and that the Third Circuit has itself applied a one-year statute of limitations to claims analogized to false arrest, *Fitzgerald, supra,* at 35, it is apparent that a one-year period is sufficient. Accordingly, because plaintiff's complaint was filed more than one year after his cause of action accrued, it is barred by the applicable statute of limitations and should be dismissed. Since the basis of defendant's motion is failure to state a claim upon which relief may be granted and the Court has considered matters outside the pleadings to reach its conclusion, the motion is converted to and considered as one for summary judgment under Fed.R.Civ.P. 12(b). *Gee v. CBS,* 471 F.Supp. 600 (E.D.Pa.1979). An appropriate order follows.

### ORDER

AND NOW, this 20th day of November, 1984, upon consideration of plaintiff's motion for reconsideration of the Court's order of June 19, 1984, and defendants' response thereto, IT IS ORDERED that the motion is DENIED.

IT IS FURTHER ORDERED that, upon consideration of the defendants' motion to dismiss the amended complaint for failure to state a claim upon which relief may be granted and the plaintiff's response thereto, the motion is GRANTED. The complaint is DISMISSED as to the City of Allentown, and judgment is entered in favor of the defendant, Frank Fischl, and against the plaintiff.